[No. 26307. *En Banc.* March 25, 1937.]

*In the Matter of the Estate of* MURIEL PETTIT MUNSON,
*Deceased.*

THE BANK OF CALIFORNIA, N. A., *as Executor, Respondent,* v. THE STATE OF WASHINGTON, *by William H. Pemberton, Supervisor of State Inheritance Tax and Escheat Division, Appellant.*[1]

[1]Reported in 66 P. (2d) 293.

538

*William H. Pemberton* and *Charles Snyder,* for appellant.

*Grosscup, Morrow & Ambler,* for respondent.

MILLARD, J.—By her last will and testament, Muriel Pettit Munson, a widow, who died November 11, 1934, named the Bank of California, National Association, Tacoma, Washington, as executor of her estate. All of the property of the testatrix was devised and bequeathed in trust to the executor named above for specific uses and purposes, among which are the following: The immediate payment of bequests to certain beneficiaries; to invest ten thousand dollars and to pay the income therefrom to Grace Munson for life. Upon the death of Grace Munson, the ten thousand dollars, or the securities in which that money was invested, are to be returned to the corpus of the estate; or, on the happening of a certain event, the ten thousand dollars, or the securities representing the same, are to be given to the son of the testatrix.

The trustee is also directed to pay to Herbert Joseph Munson, who was nineteen years of age at the time of his mother's death, two hundred and fifty dollars monthly for his maintenance and education. This income is to be paid to the son of the testatrix until he arrives at the age of twenty-seven years, at which time the son is to receive one-half of the principal amount of his mother's estate. Thereafter, and until the son arrives at the age of thirty years, the trustee is directed to pay to him, from time to time as the same is received, the entire net income of the estate remaining in the hands of the trustee. When this son arrives at the age of thirty years, the trustee is directed to deliver to him the residue of the estate of his mother. In the event that Herbert Joseph Munson dies without leaving issue, the bulk of the estate will pass to certain charitable and religious institutions.

On November 15, 1934, the will was admitted to probate. After filing the inventory and appraisment and the inheritance tax report of the estate, the executor transmitted to the inheritance tax and escheat division, on November 14, 1935, two checks—one in the amount of $2,227.53 (the amount shown by the report to be due to the state of Washington), and the other for the sum of $110.79 (an additional amount demanded on account of disallowance of Federal estate tax credit), which latter amount was paid under written protest.

On December 23, 1935, the executor transmitted to the inheritance tax and escheat division a copy of the audit of the executor's Federal estate tax return. Under date of December 30, 1935, the supervisor of the inheritance tax and escheat division acknowledged receipt of the executor's letter of December 23rd, transmitting copy of the Federal audit, and claimed an additional tax in the amount of $53.41. In that letter, the supervisor stated that, by reason of the contin-

gencies therein mentioned, additional inheritance taxes might be demanded. That portion of the supervisor's letter reads as follows:

"We also call attention to a contingency mentioned in the will of the decedent, Paragraph 4th and 5th, 'In the event the son, Herbert Joseph Munson, dies before attaining the age of thirty years, leaving no issue, . . . ' on the happening of this contingency there may be some additional inheritance taxes in this estate."

Under date of January 22, 1936, which was prior to the effective date of the change in inheritance tax rates under the provisions of the revenue act of 1935, the executor paid, under written protest and with a written request that receipts be issued, $53.41 to the supervisor of the inheritance tax and escheat division. Demands by the executor upon the supervisor of the inheritance tax and escheat division for the receipt of the state treasurer showing the amount of the inheritance tax paid, and for the certificate of the supervisor showing that the inheritance tax upon the estate had been paid in full, were refused by the supervisor, whose non-compliance with the request was on the ground that the state might claim additional inheritance taxes from the estate.

On April 16, 1936, the executor requested the supervisor to file with the clerk of the superior court for Pierce county findings in accordance with § 107 (c), chapter 180, p. 772, Laws of 1935 (Rem. Rev. Stat. (Sup.), § 11202-1 (c) [P. C. § 7030-167 (c)]), showing the amount of the inheritance tax the supervisor finds is due to the state. This request was likewise denied by the supervisor who, under date of April 24, 1936, advised the executor, as follows:

"In reference to the third paragraph of your letter, please be advised that by reason of the contingency mentioned in the third paragraph of our letter to you

óf December 30th, and by reason of the fact that if upon the happening of the contingency an additional inheritance tax may become due to the state of Washington, we cannot release the state treasurer's official receipts but must retain same in our files until the happening of the contingency.

"In reference to the fourth paragraph of your letter of April 16th, likewise it will be impossible to file findings fixing inheritance tax due until the happening of the contingency."

On April 27, 1936, the executor filed its petition in the superior court for Pierce county for an order citing the supervisor of the inheritance tax and escheat division to show cause why he should not deliver to the executor his certificate and the receipt of the state treasurer showing that the inheritance tax due the state on account of the estate of Muriel Pettit Munson, deceased, has been paid in full, or forthwith submit for determination by that court the total amount of inheritance taxes due the state.

Hearing upon the show cause order resulted in a finding by the trial court that, upon demand of the supervisor of inheritance tax and escheat division, the executor has paid the inheritance tax on the estate of Muriel Pettit Munson, deceased, in the amount of $2,280.94, and that the inheritance tax so paid

" . . . has been based on the highest rate, which on the happening of any of the contingencies or conditions created by the will of the deceased would be probable under the provisions of the state law, . . ."

The court further found that the inheritance tax due to the state had been fully paid by the executor. Based upon the foregoing findings, the court adjudged the inheritance tax due to the state from the estate of Muriel Pettit Munson, deceased, had been fully paid; and directed the supervisor of the inheritance tax and escheat division to deliver forthwith to the executor

his certificate and the receipt of the state treasurer showing that the inheritance tax due the state on account of the estate in question had been paid in full. The supervisor of the inheritance tax and escheat division appealed.

Inasmuch as the appellant has not served or filed a statement of facts or a bill of exceptions, the only question presented for review is whether the findings of the trial court support the decree. *Hoppe v. First Nat. Bank,* 137 Wash. 41, 241 Pac. 662. In the absence of a statement of facts, it will be conclusively presumed, as found by the trial court, that the inheritance tax due to the state has been fully paid by the executor; that the tax paid on the estate was based on the highest rate which, on the happening of any of the contingencies or conditions created by the will of the testatrix, would be probable under the provisions of the inheritance tax statute.

Rem. Rev. Stat., § 11206 [P. C. § 7057] (§ 2, chapter 205, p. 529, Laws of 1929), reads as follows:

"When property is transferred in trust or otherwise and the rights, interests or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, such property shall be appraised at its clear market value immediately upon the transfer or as soon thereafter as practicable and a tax shall be imposed upon such transfer at the highest rate which on the happening of any of said contingencies or conditions would be probable under the provisions of this act and such tax so imposed shall be due and payable in the same manner as other taxes: Provided, That if such tax, so determined, appears to be excessive, the matter may be submitted to the court for determination and adjustment: Provided, further, however, Where such tax is not so determined by the court, that on the happening of any contingency or condition whereby the said property or any part thereof is transferred to a person or corporation which,

under the provisions of this act is required to pay a tax at a lower rate than the tax imposed then such transferee shall recover from the State of Washington the difference between the tax imposed and the tax at the lower rate.

"Estates in expectancy which are contingent or defeasible and in which proceedings for determination of the tax have not been taken or where the taxation thereof has been held in abeyance shall be appraised at their full undiminished clear value when the persons entitled thereto shall come into the beneficial enjoyment or possession thereof without diminution for or on account of any valuation theretofore made of the particular estates for purposes of taxation upon which said estates in expectancy may have been limited. Where an estate for life or for years can be devested by the act or omission of the legatee or devisee, it shall be taxed as if there were no possibility of such devesting."

In *In re Eaton's Estate,* 170 Wash. 280, 16 P. (2d) 433, we held that the meaning of the expression "at the highest rate which on the happening of any of said contingencies or conditions would be probable" was so plain that interpretation was unnecessary; that the statute does not provide that a tax shall be imposed upon the transfer at the highest possible or the lowest possible rate, but the statute does provide that the tax shall be imposed at the highest probable rate. Our statute provides that the tax shall be imposed upon the transfer with reference to the happening of any of said contingencies or conditions which would be *probable* under the provisions of the act. *In re Waterman's Estate,* 173 Wash. 101, 22 P. (2d) 53.

The executor may not be discharged from liability for inheritance taxes, nor shall a decree of distribution be entered, nor any part of the estate distributed, until a receipt is signed by the state treasurer showing that the inheritance tax is paid, or a written waiver be executed by the inheritance tax division

showing that the estate is not subject to an inheritance tax, or there has been a judicial determination, as provided in the inheritance tax statute, that the estate is not liable to pay an inheritance tax:

"(n) An executor, administrator or trustee shall not be discharged from liability for such inheritance tax, nor shall a decree of distribution be entered, nor said estate, nor any part of said estate, be distributed until a receipt signed by the state treasurer showing that the inheritance tax is paid, or written waiver executed by the supervisor showing that the estate is not subject to inheritance tax, is filed with the clerk of the court, or the court having jurisdiction over such estate shall have determined as herein provided that such estate is not liable to pay an inheritance tax; . . ." Section 107 (n), chapter 180, Laws of 1935, p. 777 (Rem. Rev. Stat. (Sup.), § 11202-1 (n) [P. C. § 7030-167 (n)]).

Appellant supervisor contends that, although the highest rate probable has been paid, the supervisor may accept such payment and refuse to issue a receipt of payment in full, on the theory that, on the happening of another contingency, more taxes could be collected; thereby holding the matter in abeyance. It is argued: Inasmuch as the supervisor did not fix an excessive tax, there was no occasion for the taxpayer to resort to the court for determination of the tax due. While the matter may be submitted to the court for determination and adjustment if the supervisor, in determining the tax, fixes a tax that appears to be excessive, the court is without jurisdiction where the taxes determined by the supervisor are not excessive.

The proviso of the statute that:

"Where such tax is not so determined by the court, that on the happening of any contingency or condition whereby the said property or any part thereof is transferred to a person or corporation which, under the provisions of this act is required to pay a tax at a lower

rate than the tax imposed then such transferee shall recover from the State of Washington the difference between the tax imposed and the tax at the lower rate. . . ."

clearly shows that, where the court has jurisdiction because the supervisor fixes an excessive tax, there is no refund allowed. The refund is only allowed when the court has not acted, and the court can act only where the tax determined by the supervisor "appears to be excessive."

 It is further insisted that the foregoing paragraph of Rem. Rev. Stat., § 11206 [P. C. § 7057], supports the appellant's position that, where proceedings for the determination of the tax have not been taken, or where the tax is held in abeyance, the value is fixed at the time of the happening of the contingency and taxed at the time the contingent remaindermen come into possession of the property, and it is not fixed as of the date of the death of the decedent.

If we follow the supervisor's argument, it is that he may refuse to do his duty and collect, as the statute requires him to do, the highest probable rate, thereby foreclosing a determination by the court of the tax due, in view of the fact that, as less than the highest probable rate was exacted, the tax is not excessive. Such interpretation would make the statute an absurdity and permit the supervisor to exact, as the price of the clearance of the executor and relieving him of further liability, payment from the estate of taxes in excess of those imposed by the statute.

 The sole question presented by the record in the case at bar is whether, when the tax is paid, as the statute requires, at the highest rate probable—no question being raised that the tax "appears to be excessive"— and the supervisor of the inheritance tax and escheat division refuses to deliver to the executor the super-

visor's certificate and a receipt by the state treasurer showing that the inheritance tax due the state has been paid in full, the executor, administrator or trustee who pays such inheritance tax is entitled to an order of court requiring the supervisor to deliver to such executor, administrator or trustee the supervisor's certificate and the state treasurer's receipt showing payment in full of the inheritance tax due to the state.

True, the statute grants to a taxpayer the right to resort to the court for determination of the tax, if the amount determined by the supervisor to be due appears to be excessive, but no question of excessive tax is presented. The supervisor, having performed his duty in the determination of the tax, as the statute requires, and having received payment of the tax at the highest probable rate, may not successfully contend that, because proceedings for determination of the tax have not been taken, the tax has been held in abeyance.

The court found, and in the absence of a statement of facts that finding is conclusive, as stated above, that the tax has been paid in full and at the highest probable rate. The only duty, therefore, devolving upon the supervisor is to see to it that compliance be had with § 107 (n), chapter 180, p. 777, Laws of 1935, quoted above, requiring the issuance of a receipt showing that the inheritance tax is paid. The inheritance tax has been paid in full; therefore, the executor is entitled to a receipt to that effect.

To issue the receipt required by the statute would be to perform a ministerial duty, not a duty requiring the exercise of discretion. Clearly, then, the supervisor could, by a writ of mandate, be compelled to perform such official duty.

The respondent is entitled, as the trial court found and decreed, to the certificate of the appellant and the receipt of the state treasurer showing payment in full

of the inheritance tax due the state on account of the estate of Muriel Pettit Munson, deceased.

Affirmed.

ALL CONCUR.